Filed 6/18/24  In re Faith M. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re FAITH M., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MONICA H.,<br><br>    Defendant and Appellant. | G063390<br><br>(Super. Ct. No. 22DP1441)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lindsey E. Martinez, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

*      *      *

Faith M., the dependent minor in this matter, will turn 18 years old only a short while after we file our opinion herein. Her impending attainment of majority means we are less inclined to disturb the trial court's judgment than we already were. But even if Faith were not aging out of the system, we are still confident the trial court had substantial evidence to support its finding of jurisdiction in this case, and we affirm.

# I

## FACTS

Faith is one of three children born to Monica H. (mother) and Osman M. (father). There was domestic violence between mother and father during their relationship, which ultimately led to father's deportation. Ever since then, father has had little contact with Faith. Mother lives in Whittier, with Faith's two sisters.

On October 24, 2022, Faith was taken into protective custody by Garden Grove police due to allegations of general neglect. She had run away from home and was discovered by police at a motel staying with a strange man. Faith said her mother had physically abused her in the past and she had to engage in sex work to keep a roof over her head. Mother denied allegations of physical abuse in the home, as did Faith's two sisters. Faith was prone to running away, and mother had tried various things to help Faith, such as sending her to counseling and restricting or preventing access to social media, phones,

or computers.  Even with these efforts, mother was unable to prevent Faith from running away or engaging in risky behaviors.

Faith was housed at Orangewood Children and Family Center (Orangewood) while awaiting a more permanent placement.[1] On October 25, 2022, the Orange County Social Services Agency (SSA) filed a petition to declare Faith a dependent under subdivisions (b)(1), (b)(2), (c), (g) and (j) of Welfare and Institutions Code section 300.[2]  In pertinent part, the petition alleged mother was unable to protect Faith from being sexually trafficked or sexually exploited.  Faith had reported mother and mother's friend from church, Ben, have been physical with her, and she is treated differently from her sisters.  She refused to return home and instead was living a risky lifestyle, sleeping in parks, meeting with adult men she met on dating apps, and accepting shelter from strangers.  The petition further alleged father's whereabouts were unknown, though he was believed to be in Mexico.  Father had never provided for Faith.

An SSA social worker was able to interview mother in connection with the petition on October 24, 2022.  She denied any abuse, but said she did not allow her daughters to have cell phones. Faith would nevertheless obtain a phone when she would go out on the streets, and at one point when Faith was 14 years old, mother found that grown men were sending her photos of themselves and their

[1] Neither Faith nor her mother identified any relatives or friends who could take her.

[2] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.  The allegations under section 300, subdivisions (e) and (j) were later stricken.

genitalia on the social media app Instagram.  Faith contracted a sexually transmitted disease, and mother could observe hickeys on her body.

Faith told social workers she would feel like killing herself if she had to go back home.  However, she continually had issues obeying the rules at Orangewood, such as hiding a cell phone for personal use.

The initial detention hearing was held on October 26, 2022, but in what would become an ongoing pattern of behavior, Faith left Orangewood and went absent without official leave (AWOL).  The juvenile court had to issue a protective custody warrant and set a warrant review hearing for December 2, 2022.

SSA filed an interim review report on November 30, 2022.  Faith was still AWOL at this point.  SSA had received an educational progress report for Faith which showed she was in the 11th grade, but was failing all of her classes.  She was behind her graduating class by 100 credits.  She had an individualized education plan (IEP) in place for a specific learning disability.

On November 2, 2022, a social worker spoke with Garden Grove police and received the police report which documented the incident involving Faith on October 23.  Police told the social worker Faith's case was suspected to be human trafficking.

The police report stated mother had called to report Faith missing and to advise she might be detained against her will at the Morada Inn & Suites with a male.  When questioned, the male stated he had come upon Faith on October 21 in front of an auto parts store in an uncomfortable interaction with another male, and Faith had asked him to help her.  She had told him she had been kicked out of her

4

mother's home, so the male got a motel room for the two of them. He felt uncomfortable and left the following morning. However, after a few hours, he returned and saw two males leaving the room. He and Faith checked out of the room, and he got another motel room at the Morada Inn & Suites on Garden Grove Boulevard on October 22. The man insisted nothing illegal had happened, and Faith had told him she was 20 years old. He then took Faith to his female cousin's apartment in Anaheim. His cousin, a freelance massage therapist, had offered to assist Faith with work by taking her along on two massage sessions. The massage therapist also said nothing illegal happened.

Once Faith had returned to Orangewood, the initial petition hearing was held on December 20, 2022. Faith was ordered to stay at Orangewood, over mother's concern that Faith could easily run away. The juvenile court ordered SSA to assess whether Faith could receive one-on-one behavioral support, and to refer Faith for CEGU (Clinical Evaluation and Guidance Unit) assistance. Mother was to get liberal visitation at Orangewood, at first supervised, and then unsupervised, and the court authorized SSA to assess whether visits could take place away from Orangewood. If Faith expressed the desire to return home, the court authorized SSA to allow it. The court set the jurisdictional hearing for January 9, 2023.

What followed was a rather frustrating cycle of recurring events. On December 22, 2022, Faith went AWOL. She came back at one point, but again went AWOL as SSA filed its jurisdictional/ disposition report on January 5, 2023.

The jurisdictional/disposition report suggested SSA was meeting some resistance from mother. She denied all allegations in the

petition but refused to disclose a lot of information about her history. The social worker indicated mother should engage in services – parenting education, individual counseling, conjoint therapy, and a training for caregivers of commercially and sexually exploited children (CSEC) – but mother was noncommittal and resentful about the dependency case. Mother was also offered visitation with Faith but refused because she felt Faith was not safe at Orangewood, and thus she did not want to visit with her there.

Mother also reported Faith had been diagnosed with depression and oppositional defiant disorder and had been going to twice-weekly therapy sessions up until she began running away from home. Mother wanted Faith to continue in therapy, and as of December 29, 2022, Orangewood had set her up with a CEGU therapist, Stephanie Torres. Faith had expressed interest in a transitional independent living plan and on December 29, she was assigned a social worker to liaise with her on this as well. Without Faith, SSA could not generate a case plan and recommendation, so a recommendation was deferred until Faith was located.

At the next jurisdictional hearing date, Faith did not appear because she had just returned to Orangewood and was very exhausted. The court continued the hearing and encouraged mother to visit Faith at Orangewood and try to persuade her to stay put and to appear for the next hearing.

SSA filed its first addendum report on January 11, 2023. Its recommendation was for the court to sustain the petition and transfer the matter to Los Angeles County, the county of mother's residence. Faith was AWOL again, and her visit with mother had not happened

due to some miscommunications. SSA was concerned about Faith's unwillingness to go home with mother.

At the continued jurisdictional hearing on January 11, everyone learned that Faith had gone AWOL after a visit with her mother. During the visit, Faith reported that she had recognized a staffer at Orangewood as a man who had sexually assaulted her in Long Beach. Mother had never heard this before, and it was news to the court and other counsel at the hearing. Mother was understandably very upset and wanted Faith out of Orangewood. The juvenile court ordered SSA to immediately prepare a report and the hearing would reconvene on January 13.

SSA filed an information only ex parte application to explain why Faith's report to Orangewood staff had not been passed along to mother or the court. Apparently when Faith returned from being AWOL in December, she was asked to move to the adolescent girls' cottage where she recognized one of the workers as being a man she met on a dating app previously. She had an inappropriate encounter with him and was concerned about his being around young girls at Orangewood. The male staffer was confirmed to have been involved and sent home. The report had been referred out to law enforcement for investigation, but SSA had failed to inform mother. The juvenile court was not at all pleased with this information and ordered SSA to keep it, mother, and all counsel informed of Faith's comings and goings from Orangewood. SSA was also ordered to obtain the police report and submit it. After this incident, SSA filed an ex parte application every time Faith went AWOL in order to obtain a protective custody warrant, and it turned out to be quite a few times.

In its addendum report filed January 19, 2023, SSA advised it had obtained the police report from the Orange County Sheriff's Department so that Long Beach police could begin their investigation, as the alleged sexual assault had occurred within its jurisdiction. Faith continued to come and go from Orangewood. When she met with social workers, Faith denied receiving food, shelter, or money in exchange for sexual acts. However, she described the sexual assault which had occurred in October 2022. She was with her then-boyfriend[3] and he had to go to work. So he dropped her off in front of a Jack in the Box restaurant around the streets of Anaheim and Magnolia. Faith said she needed a place to sleep and so she contacted a man on a dating app and he picked her up. He parked the car and attempted to assault her. She was able to escape the situation and was eventually picked up by her boyfriend again.

When Faith returned to Orangewood in December 2022, she saw the male who had assaulted her working there and they made eye contact. Faith was uncomfortable and told another staff member. The staff member called the sheriff's department and Faith was interviewed.

Faith told social workers she was willing to do a trial home visit with mother in order to see if things had changed before deciding whether to return home permanently. SSA was willing to do this, but mother was not willing to have Faith for just an overnight visit. Mother wanted her home permanently.

---

[3] Faith's boyfriend was 20 years old or more and social workers as well as mother were very concerned about his relationship with her.

Faith went AWOL again on January 17 and 18. When the social worker reached her, Faith declined to even do an overnight visit with mother because she said she had spoken to her and nothing, according to her, had changed. Mother said Faith decided not to come for a visit because she was going to be required to give up her phone and tablet, which made her angry. The social worker reminded mother that Faith's frequent absconding from Orangewood made it necessary for her to have a phone for them to keep contact with her.

The January 20 jurisdictional hearing date was continued because no search declaration had been completed for father. In the ensuing time, Faith continued to go AWOL from Orangewood and return at intervals. Ms. Torres, her CEGU therapist, indicated Faith was doing this due to anxiety and a dislike of Orangewood. She needed some certainty about next steps. Orangewood staff noted Faith was now encouraging other children to go AWOL with her. In January 2023, after leaving Orangewood with a few other children without authorization, Faith and the children had been confronted by a man with a knife outside the facility.

Meanwhile, the juvenile court again had to continue the jurisdictional hearing from February 3 to February 22 because Faith was not present.

Around February 16, Faith began going to Project Choice, a day-time facility for at-risk youth. She was afraid to go back to Orangewood because of conflict with some other girls there. The February 22 hearing date had to be continued again because Faith went AWOL.

9

In an addendum report filed April 13, SSA reported Faith seemed to trust Ms. Torres and would call her when she was AWOL. Faith indicated she was interested in going to a group home. One time she returned from being AWOL, she had an arm injury which she was reluctant to allow staff to fully examine. Mother suspected it was due to domestic violence. Faith did seem to attribute the injury to her boyfriend. Faith also was observed with a hickey on her neck. On March 27, the social worker asked mother if they could schedule a child and family team meeting, but mother was not interested. She blamed Faith for being disinterested. As of March 29, the social worker said she had tried to move the process forward with mother by offering to schedule an in-person meeting and home assessment, but mother responded that Faith wanted to live an immoral lifestyle. She asked the social worker not to call or text her.

The jurisdictional hearing was continued twice more to April 13. The court set the matter for a contested hearing on April 20 and ordered Faith, mother, and her sister to have an unsupervised lunch together that day, which they did. But Faith went AWOL again and the hearing had to be continued to May 24.

On May 3, Faith was hurt while in the car with her boyfriend. They were trying to escape from police and Faith attempted to jump out of the car. Faith denied that her boyfriend was abusive, but Orangewood staff suspected the boyfriend was being controlling, since Faith appeared fearful of him. About a week later, she had more injuries after a fight with the boyfriend. Staff at Orangewood suspected the boyfriend was a gang member. He would cover his license plates when dropping and picking Faith up from the facility. By the end of

May, Faith had broken up with the boyfriend, but appeared to have other dates with men, which concerned staff.

Orangewood staff finally told SSA that Faith should be placed elsewhere. She was not willing to follow the rules and was a bad influence on the other kids there.

The May hearing date had to be continued to June 28 because Faith was AWOL again. Faith had begun going regularly to Project Choice to eat, sleep, and shower. But she was still at risk. Anaheim police responded to a call involving a female and male fighting, and the male, believed to be Faith's boyfriend, fled. She went back to Orangewood but went AWOL again.

When SSA filed its 11th addendum report on August 11, Faith had returned to Orangewood. She was attending the school there, but the school reported mother had refused to sign Faith's IEP and mother wanted no further contact from the school. Faith was regularly visiting Project Choice but had nearly left with an older man and had to be stopped by staff. They considered Faith at high risk for CSEC.

Faith completed orientation for the independent living program, but SSA indicated she needed to be declared a dependent before such services could start. Attempts to arrange conjoint therapy with mother were terminated after multiple attempts to contact mother without success. Mother had also told Faith's school that she was "done" trying to do any paperwork for Faith.

Faith admitted she was smoking marijuana on a daily basis while AWOL, but she was willing to try and change in order to pursue the right program. One day she returned with her right arm in a sling and told workers she had punched a car. She declined to elaborate

further.  She was adamant she still did not wish to go home with mother.  Faith wrote a letter to the court, which SSA attached to its report.  In it, Faith said she wanted to get into the independent living program once she aged out of the system.

The August 14 jurisdictional hearing, which Faith attended, was continued to September 6.

On August 18, mother petitioned the court for a copy of the juvenile case file and its order allowing Faith to be released to SSA at any time.  Mother claimed Faith did not wish to stay at Orangewood and wanted to come home, but SSA would not allow it.  In its September 5 addendum report, SSA stated Faith was getting into more trouble at Orangewood and did not wish to stay.  The social worker had advised Faith that SSA needed to do a child and family team meeting and conduct an in-home assessment.  Mother declined the meeting and assessment, and SSA allowed Faith to be released to her.  However, on September 5, Faith contacted her social worker to say she had run away from mother's home and wanted to go back to Orangewood.  She said nothing had changed at home.

The jurisdictional hearing date was continued to September 29.  Faith did not appear and was not answering her phone.  On September 18, Faith went AWOL and was picked up by a social worker at Loyola Marymount University where she had gone to meet a man she met on the Tinder app.  Faith also claimed she was dating a 19-year-old who was in the military in San Diego.

When the jurisdictional hearing was finally held on September 29, Faith testified.  She remained firm she did not want to go home because she was not comfortable with Ben, her mother's

boyfriend. However, she denied being sexually abused or exploited by anyone. She admitted she gave massages for payment. She wanted to have Orangewood or another safe place available to her besides mother's home. She enjoyed speaking with Ms. Torres, her CEGU therapist, and wanted to keep her dependency case open so she could go into the transitional living program. If she was sent home with mother, Faith said she would probably run away.

The jurisdictional hearing resumed on October 3, but was continued to October 13 because Faith did not show up. In its addendum report dated October 3, SSA reported that mother refused to set up a home visit. She said she did not want Faith or the social worker in her home and she refused to provide her new address, since she had moved.

When the juvenile court made its ruling on October 19, it found SSA had shown by a preponderance of the evidence that Faith was a dependent within the definitions provided under section 300, subdivisions (b)(4) and (g). The court was concerned Faith was continuing to engage in risky behaviors. She had testified she would run away from home if sent home with mother, and mother was hesitant to accept her back home. Faith was ordered removed from mother's care, and mother appealed.

II

DISCUSSION

Mother contends the juvenile court lacked substantial evidence that Faith was being sexually exploited or at risk of being

13

exploited, and as a result the court lacked a basis to remove Faith from her custody. We disagree.

According to section 300, subdivision (b)(1), a child comes within the juvenile court's jurisdiction if she is at substantial risk of physical harm or illness due to the parent's inability or failure to supervise or protect the child. (*Id.*, subd. (b)(1)(A).) And under section 300, subdivision (b)(4), "a child who is sexually trafficked, as described in Section 236.1 of the Penal Code, or who receives food or shelter in exchange for, or who is paid to perform, sexual acts described in Section 236.1 or 11165.1 of the Penal Code, and whose parent or guardian failed to, or was unable to, protect the child, is within the description of" subdivision (b).

The most important words in the above statutory provision are "substantial risk." Here, the record does not contain "smoking gun" evidence that Faith was made to perform a specific sexual act in exchange for food, shelter, or compensation.[4] However, the record is replete with information suggesting Faith is at least at great risk of being sexually exploited due to her penchant for running away from safe spaces and meeting up with adult men.

Indeed, this was the very reason she was picked up by Garden Grove police in the first place. She was staying in a motel with an adult man and had been assisting the man's cousin with her massage therapy clients. By the man's account, Faith had asked him for help to get away from another man who was making her feel

---

[4] SSA responds that Faith told social workers at the outset of the case that she had performed sexual acts in exchange for shelter, but she later denied such activity.

14

uncomfortable.  Faith had no desire to return home, and by her mother's own statements to social workers, she was leading a dangerous lifestyle even before she was detained, enough so that she contracted a sexually transmitted disease.

The October 2022 alleged sexual assault involving the Orangewood employee also concerns us.  Faith claimed she had been dropped off at a fast food restaurant by her boyfriend, and that she had contacted the male on a dating app because, according to her, she needed a place to sleep.  Being contacted through a dating app, the male probably assumed she was looking for a romantic relationship and met her with that in mind.  We wonder whether this was but one example out of many times Faith engaged in the same behavior in order to have a place to sleep.  And it is unpleasant to think what she might have had to do on many occasions in order to get one.

During her time at Orangewood, Faith continued to demonstrate risky behavior even while she refused to go home with her mother.  She went AWOL innumerable times, often meeting up with her adult boyfriend.  She would sometimes come back injured.  Even after she broke up with the boyfriend, she went AWOL at least once to meet men for dates.

We are relieved that Faith found a safe place in Project Choice.  Kristi Boogaard, the supervisor of the program, submitted a letter to the juvenile court describing it as a drop-in center for youth "who are identified as being trafficked or are at-risk of being trafficked." Faith is also looking towards the future.  She submitted a letter to the court indicating she wished to make her education a priority, and that she wished to get into independent living once she aged out.

In light of the record before us, we see no need to disturb the trial court's jurisdictional finding and affirm the judgment.

## III
## DISPOSITION

The judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

DELANEY, J.